**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| REID POSTLE, individually and on behalf of all others similarly situated, | **Case No.** |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. § 227 *ET SEQ*. (TELEPHONE CONSUMER PROTECTION ACT)** |
| ALLSTATE INSURANCE COMPANY, | |
| Defendant, | **CLASS ACTION** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Reid Postle (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

**NATURE OF ACTION**

1.      This case involves a scheme by Allstate Insurance Company ("Allstate") (by and through its agents) to market its services through the use of autodialers in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

2.      As described more fully below, Allstate has issued a high volume of insurance quotes – and made substantial sales of products and services – derived through illegal telemarketing calls made through a currently unknown lead generator entity or entities making calls on its behalf.

3.      The use of lead generators by insurance companies to generate leads, while seeking to shield themselves from liability for the illegal calling activities undertaken by those

lead generators, is a common practice and has been the subject of extensive litigation. *See e.g.,*
*Smith et al. v. State Farm Mutual Automobile Ins. Co.,* Case No. 1:13-cv-02018 (N.D. Ill.); *Rice-*
*Redding et al. v. Nationwide Mut. Ins. Co.,* Case No. 1:16-cv-03634-TCB (N.D. Ga.).

4. Allstate contacted Plaintiff and Class Members on their cellular telephones
without their prior express written consent within the meaning of the TCPA. Defendant violated
the TCPA by contacting Plaintiffs and Class Members on their cellular telephones for non-
emergency purposes via an "automatic telephone dialing system," as defined by 47 U.S.C. §
227(a)(1), and/or by using "an artificial or prerecorded voice" as described in 47 U.S.C.
§227(b)(1)(A), without their prior express written consent within the meaning of the TCPA.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to the Class Action Fairness
Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2). The matter in
controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each
member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages
for each call that has violated the TCPA. Further, Plaintiff alleges a national class, which will
result in at least one Class member from a different state.

6. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and
47 U.S.C. § 227 *et seq.*

7. This Court has personal jurisdiction over Allstate because the company is licensed
to conduct the business of insurance in the State of Illinois and because Allstate's corporate
headquarters are located in Illinois. It therefore has established minimum contacts showing it
has purposefully availed itself to the resources and protection of the State of Illinois. The lead
generation calls that are the subject of this case were made for the purpose of benefitting
Allstate.

8.      Venue is proper in the United States District Court for the Northern District of Illinois because defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because Allstste's contacts with this District are sufficient to subject it to personal jurisdiction.

## PARTIES

9.      Plaintiff Reid Postle is, and at all times mentioned herein was, an individual citizen of the State of Ohio, who resides in Columbus, Ohio.

10.     Allstate Insurance Company is a Delaware corporation with corporate headquarters in Illinois.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

11.     In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

12.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."

13.     Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express written consent of the called party.

14.     According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

*Footnote continued on next page*

15.     The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[2]

16.     The FCC has defined prior express written consent in 47 C.F.R. § 64.1200(f)(8) as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

17.     Under the TCPA, the burden is on the seller – here Allstate – to have obtained and documented prior express written consent before calls were made.

18.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* FCC Declaratory Ruling, Memorandum and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).

19.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[3]

20.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is

---

[2] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).
[3] In the Matter of The Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules, et al., CG Docket No. 11-50, 28 F.C.C.R. 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 F.C.C.R. at 6586 (¶ 34).

21. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at n.107.

22. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 F.C.C.R. at 6592 (¶ 46).

23. Allstate is legally responsible for ensuring that its calling vendors complied with the TCPA, even if Allstate itself did not make the calls.

24.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information. " *Id.* at 6592-93 (¶ 46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

25.     Allstate may also be liable for the calls that are the subject of this case based upon other legal theories.

## FACTUAL ALLEGATIONS

### Facts Related to Plaintiff

26.     Plaintiff is, and at all times mentioned herein, was, a "person," as defined by 47 U.S.C. § 153(39)/

27.     On August 23, 2017, Plaintiff received a telephone call to his cell phone that appeared to come from telephone number (614) 363-6037.  The 614 area code is Plaintiff's home area code.

28.     On information and belief, the lead generator made the call appear to be coming from the Plaintiff's home area when it really originated someplace else, for the purpose of tricking Plaintiff into believing the call was from a neighbor or local business, thus deceiving Plaintiff into answering a phone call he might not otherwise have answered.

29.     After a significant pause of approximately four seconds, Plaintiff was connected with a live person, who informed him that he was calling on behalf of multiple insurance carriers, including "Allstate, Farmers, and a few others."  This operator did not disclose what entity he worked for.

30. This operator asked for personal information from Plaintiff, such as his name, address, date of birth, type of vehicles owned, and driving history.[4] Upon information and belief, the operator logged this information in a database.

31. The operator informed Plaintiff that he could receive a quote for his car insurance needs, and that he would be connected to an agent for that quote.

32. Plaintiff was then directly connected with Maureen Dabbieri, an Allstate Insurance agent located at 5041 Victor Drive, Suite B, Medina, Ohio. Ms. Dabbieri informed Plaintiff that she works with lead generator entities to obtain leads on insurance quotes, and that she is an Allstate exclusive agent.

33. Plaintiff's call was then disconnected. Ms. Dabbieri called Plaintiff's cellular telephone from telephone number 330-591-9920 to complete the insurance quote. On information and belief, 330-591-9920 is a telephone number associated with Ms. Dabbieri's insurance agency on Allstate's online insurance agent directory. Plaintiff did not provide his cellular telephone number directly to Ms. Dabbieri and is not aware of having ever provided his cellular telephone number to any insurance lead generator or to Allstate. Plaintiff is not a current or former customer of Allstate. Plaintiff did not request any quote for insurance from Allstate or any lead generator within 90 days of these calls.

34. Neither Allstate nor any of its agents of telemarketing vendors had Plaintiff's or the Class Members' prior express written consent before the calls were made.

**Actual Authority**

35. Allstate is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39)/

---

[4] Because Plaintiff did not know the identity of the entity calling him and thought the call could be a scam, he provided the fictitious name "Joe Patterson."

36.     Upon information and belief, Allstate oversees and controls its agents' actions generally, but particularly with respect to telemarketing.

37.     Upon information and belief, Allstate and its agents have contracted with the lead generator who called Plaintiff to employ an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), to contact potential new customers such as Plaintiff.  At least some of those calls, such as the call to Plaintiff, are made to cellular telephones.

38.     The telephone number that the lead generator, acting on behalf of Allstate, called to contact Plaintiff made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

39.     Plaintiff did not provide his "prior express written consent" allowing the lead generator or Allstate to place telephone calls to Plaintiff's cellular phone placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

40.     The lead generator, acting on behalf of Allstate, did not make telephone calls to Plaintiff's cellular phone "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

41.     The calls made by the lead generator, acting on behalf of Allstate, to Plaintiff's cellular phone placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiff's prior express written consent, violated 47 U.S.C. § 227(b)(1)(A).

42.     Under the TCPA, the burden is on Defendant to demonstrate that Plaintiff and Class members provided prior express written consent within the meaning of the statute.[5]

43.     The Defendants acted willfully, knowingly, and without regard to the TCPA when it initiated the calls described above.

**Apparent Authority**

---

[5] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

44.     The operator for the lead generator informed Plaintiff at the beginning of the call that "Allstate, Farmers, and others" would be making automobile insurance quotes to customers who stayed on the line.  Thus, the lead generator, upon information and belief, had authority to use the Allstate's "trade name, trademark and service mark[s]," as discussed in the May 2013 FCC Ruling.  As such, the lead generator is an apparent agent of Allstate.

45.     Upon information and belief, Allstate's contracts with the lead generator require responding callers to be directed to specific local insurance agents of Allstate based on predetermined criteria, such the customer's geographic and/or customer profile.  By providing information to the lead generator in order that it could properly route responding customers to the proper agents, Allstate "allow[ed] the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including . . . access to detailed information regarding the nature and pricing of the seller's products," as discussed in the May 2013 FCC Ruling.  As such, the lead generator is an apparent agent of Allstate.

46.     The lead generator electronically transferred potential customer information, including the Plaintiff's information such as his telephone number, directly to local insurance agents such as Ms. Dabbieri.  Thus, the lead generator has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.  As such, the lead generator is an apparent agent of Allstate.

47.     By hiring and endorsing the hiring of the lead generator to make calls on behalf of its agents to generate sales leads, Allstate "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.  Similarly, by accepting these contacts, the Allstate agents "manifest[ed] assent or otherwise consent[ed]  . . . to act" on behalf of Allstate, as described in

the Restatement (Third) of Agency. As such, the lead generator and Allstate agents are the formal "agents" of Allstate.

**<u>Ratification</u>**

48. In the alternative, Allstate and its insurance agents repeatedly ratified the lead generator's illegal telemarketing campaigns by knowingly accepting the benefits of these activities when Allstate and its insurance agents accepted leads derived therefrom. These calls and leads provided Allstate and its insurance agents with additional business prospects and actual business.

49. Allstate and its insurance agents are aware that their lead generators make outbound calls, generally, and any reasonable person would have been aware of the illegal telemarketing alleged herein, under these circumstances. Upon information and belief, Allstate knew about the lead generator's telemarketing and that it was making calls using an "automatic telephone dialing system" to generate these leads, when Allstate agreed to accept such leads, quoted insurance from such leads and ultimately accepted business from persons who accepted the marketing leads from the lead generator.

<b><u>CLASS ACTION ALLEGATIONS</u></b>

50. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

51. Plaintiff brings this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Federal Rule of Civil Procedure 23.

52. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

All persons within the United States who received a non-emergency telephone call on or after October 16, 2013, from the lead generator that Plaintiff received his call from, placed while such lead generator was developing consumer insurance leads for Allstate or its exclusive agents, through the use of the same or similar telephone system as was used to call Plaintiff, or an artificial or prerecorded voice.

Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is a member of, the Class.

53.     Excluded from the Class are the Defendant, and any entities in which the Defendant has a controlling interest; the Defendant's insurance agents and employees; any Judge to whom this action is assigned and any member of such Judge's staff and immediate family; claims for personal injury, wrongful death and/or emotional distress; and all calls made by, on behalf of, or in connection with, the Oh Insurance Agency of Tustin, California, or autodialer company Sales Dialers.[6]

54.     Plaintiff does not know the exact number of members in the Class, but Plaintiffs reasonably believe Class members number, at minimum, in the thousands.

55.     Plaintiff and all members of the Class have been harmed by the acts of the Defendant, because their privacy has been violated, they were subject to annoying and harassing calls that constitute a nuisance, they temporarily lost legitimate use of their cell phones in having to deal with the calls, and they were charged for incoming calls.

56.     This Class Action Complaint seeks injunctive relief and money damages.

---

[6] *See Abante Rooter & Plumbing, Inc. v. Oh Insurance Agency, et al.,* Case No. 1:15-cv-09025 (N.D. Ill.)

57.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

58.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

59.     Further, the Class can be identified through records maintained by Allstate and/or the lead generator.

60.     There are well defined, nearly identical, questions of law and fact affecting all parties.

61.     The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

62.     Such common questions of law and fact include, but are not limited to, the following:

    a.     Whether the lead generator, acting on behalf of Allstate, used an automatic telephone dialing system in making non-emergency calls to Class members;

    b.     Whether the lead generator, acting on behalf of Allstate, used an artificial or prerecorded voice in its non-emergency calls to Class members;

    c.     Whether Allstate can meet its burden of showing it obtained and possessed prior express written consent (*i.e.*, written consent that is clearly and unmistakably stated), to make such calls before such calls were made;

    d.     Whether Allstate's conduct was knowing and/or willful;

    e.     Whether Allstate is liable for statutory damages; and

    f.     Whether Allstate should be enjoined from engaging in such conduct in the future.

63.     As persons who received non-emergency telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice, without their prior express written consent to Allstate within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member who also received such phone calls.

64.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.

65.     Plaintiff has no interests which are antagonistic to any member of the Class.

66.     Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

67.     A class action is the superior method for the fair and efficient adjudication of this controversy.

68.     Classwide relief is essential to compel Allstate to comply with the TCPA.

69.     The interest of the Class members in individually pursuing claims against Allstate is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter Allstate from engaging in the same behavior in the future.

70.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express written consent required under the statute to authorize such calls to their cellular telephones.

71.     Allstate has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

72.     Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

## FIRST COUNT

## STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. §  227 *ET SEQ*.

73.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

74.     The foregoing acts and omissions of Allstate constitutes numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. §  227 *et seq.*

75.     As a result of Allstate's violations of 47 U.S.C. §  227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

76.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Allstate's violation of the TCPA in the future.

77.     Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## SECOND COUNT

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ*.

78.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

- 14 -

79.     The foregoing acts and omissions of Allstate constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

80.     As a result of the Allstate's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

81.     Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Allstate in the future.

82.     Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Allstate:

A.     Injunctive relief prohibiting such violations of the TCPA by Allstate in the future;

B.     As a result of Allstate's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

C.     As a result of Allstate's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500 in statutory damages for each and every call that violated the TCPA;

D.     An award of reasonable attorneys' fees and costs to counsel for Plaintiff and the Class, to be paid from the common fund judgment;

E.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems

appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the

lawyers and law firms representing Plaintiff as counsel for the Class;

        F.       Such other relief as the Court deems just and proper.


Dated: October 4, 2017             By:  /s/Alexander H. Burke

                                     BURKE LAW OFFICES, LLC
                                     Alexander H. Burke
                                     Email: aburke@burkelawllc.com
                                     Daniel J. Marovitch
                                     Email: dmarovitch@burkelawllc.com
                                     155 N. Michigan Avenue, Suite 9020
                                     Chicago, IL 60601
                                     Telephone: (312) 729-5288

                                     LIEFF, CABRASER, HEIMANN &
                                     BERNSTEIN, LLP
                                     Jonathan D. Selbin (admitted to the N.D. Ill. general bar)
                                     Email: jselbin@lchb.com
                                     250 Hudson Street, 8th Floor
                                     New York, NY 10013
                                     Telephone: (212) 355-9500
                                     Facsimile: (212) 355-9592

                                     LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                     Daniel M. Hutchinson (admitted to the N.D. Ill. general bar)
                                     Email: dhutchinson@lchb.com
                                     275 Battery Street, 29th Floor
                                     San Francisco, California 94111-3339
                                     Telephone: (415) 956-1000
                                     Facsimile: (415) 956-1008

                                     LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                     John T. Spragens (admitted to the N.D. Ill. general bar)
                                     Email: jspragens@lchb.com
                                     One Nashville Place
                                     150 Fourth Avenue North, Suite 1650
                                     Nashville, TN 37219-2423
                                     Telephone: (615) 313-9000
                                     Facsimile: (615) 313-9965

MEYER WILSON CO., LPA
Matthew R. Wilson (Ohio State Bar No. 0072925;
admitted to the N.D. Ill. general bar)
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr. (Ohio State Bar No. 0091162;
admitted to the N.D.Ill. general bar)
Email:  mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

*Attorneys for Plaintiff and the Proposed Class*

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts so triable.

Dated: October 4, 2017                By:  /s/Alexander H. Burke

BURKE LAW OFFICES, LLC
Alexander H. Burke
Email: aburke@burkelawllc.com
Daniel J. Marovitch
Email: dmarovitch@burkelawllc.com
155 N. Michigan Avenue, Suite 9020
Chicago, IL  60601
Telephone:  (312) 729-5288
Facsimile:  (312) 729-5289


LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin (admitted to the N.D. Ill. general bar)
Email:  jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson (admitted to the N.D. Ill. general bar)
Email:  dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
John T. Spragens (admitted to the N.D. Ill. general bar)
Email:  jspragens@lchb.com
One Nashville Place
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219-2423
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965

MEYER WILSON CO., LPA
Matthew R. Wilson (Ohio State Bar No. 0072925;
admitted to the N.D. Ill. general bar)
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr. (Ohio State Bar No. 0091162;
admitted to the N.D.Ill. general bar)
Email:  mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066


*Attorneys for Plaintiff and the Proposed Class*